UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROSEMARIA JACKSON, ET. AL.,                    Case No. 12-12190

       Plaintiffs,                                   Honorable Nancy G. Edmunds

v.

TARGET CORPORATION,

       Defendant
_____/

**ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [18]**

This is a personal injury case with jurisdiction arising under Defendant's removal based on 28 U.S.C. § 1332 (diversity). This matter comes before the Court on Defendant's motion for summary judgment. The motion turns on whether Defendant had constructive notice, critical to showing Defendant's breach of duty. Plaintiffs oppose Defendant's motion, arguing that sufficient dispute exists as to material facts to defeat summary judgment. Defendant argues that it did not have knowledge of the alleged hazardous condition and was not on notice of the condition at the time the incident took place. For the reasons stated below, Defendant's motion for summary judgment is DENIED.

**I.     Facts**

On January 4, 2012, Plaintiff Rosemaria visited Defendant's Target Store located at 29451 Plymouth Road, Livonia, Michigan as a lawful business invitee looking to purchase some discounted holiday items. (Am. Compl. ¶ 4-6.) After spending between fifteen and twenty minutes in the store, Plaintiff Rosemaria did not find the items she

1

was looking for and decided to leave, walking along a thoroughfare between the cash register area and Defendant's food service area ("Food Avenue"). (Dkt. 24, Pls.' Resp. to Mot. Summ. J., Ex. A, Jackson Dep. 42:6-43:8, July 10, 2012; Dkt. 18, Def.'s Mot. Summ. J., Ex. C, Video of Incident ("Video") starting at about 2:07:27 PM.) Plaintiffs charge that Plaintiff Rosemaria slipped on a "wet, translucent, slippery substance" while exiting Defendant's store, striking her head on the floor and sustaining serious injuries. (Am. Compl. ¶6; Jackson Dep. 46:6-47:10; Video at about 2:07:34 PM.)

Plaintiff Rosemaria alleges that, while lying on the ground, she observed a translucent puddle on the tile floor, which she could not see prior to the fall, and which she states caused the fall. (Jackson Dep. 46:11-46:12, 52:14-53:9.) Plaintiffs do not provide evidence to show that Defendant's employees knew of the water spill before Plaintiff Rosemaria's fall, however, the Record does indicate a history of ice spills in the general area. (Pls.' Resp., Ex. B, Kireko Dep. 9:18-10:1, Jan. 31, 2013.) The Record includes differing accounts both of the size and number of water spots in the area. Plaintiff Rosemaria testified that she observed a "stream of water" measuring around two feet by six inches. (Jackson Dep. 52:17-53:7.) Two of Defendant's employees testified that they did not observe any water after the fall. (Kireko Dep. 13:3-13:9; Pls.' Resp., Ex. C, Marshall Dep. 23:17-23:19, Jan. 31, 2013.) Other employees agree that they saw water on the ground in the surrounding area just after Plaintiff Rosemaria's fall, but disagree as to the size and number of water spots. Employee Keith Bartlett testified that he saw "maybe a nickel size" spot of water. (Def.'s Mot., Ex. D1, Bartlett Dep. 55:23-56:5, Aug. 17, 2012.) Mr. Jedrek McSeveny testified that he observed "little specklets of water droplets," roughly three in number, "within an area the size of a silver

dollar." (Def.'s Mot., Ex. F1, McSeveny Dep. 19:19-20:9, Aug. 17, 2012.) Ms. Jessica Nudi testified to seeing between two and three spots "[p]robably not even an inch in width." (Def.'s Mot., Ex. I1, Nudi Dep. 16:23-16:25, Aug. 17, 2012.)

Defendant's employees do agree, however, that the amount was small, barely visible, and could not be seen from a distance. (Def.'s Mot., Ex. L, Johnson Dep. 11:12-11:13, Sept. 20, 2012; Def.'s Mot., Ex. N, Nawrocki Dep. 19:22-20:4, Sept. 20, 2012.) Due to its clarity and the sheen of the floor, the water spill does not appear in photos taken immediately after the fall. (Def.'s Mot., Ex. J, Photos.) Security video does not show any cause for the water spill in the seventeen minutes leading up to Plaintiff Rosemaria's fall. (Video.) The video also shows a small wet floor sign in the cash register area immediately adjacent, known as a safety cone. (*Id.*) Plaintiffs assert that Plaintiff Rosemaria could not see the safety cone as she walked. (Pls.' Resp. at 7.)

One of Defendant's employees testified that employees commonly place such signs after mopping an area. (McSeveny Dep. 20:19-20:23.) Another staff member indicated, however, that employees placed wet floor signs as soon as they noticed a spill (before mopping), and did not remove them until the area was "completely dry," sometimes hours later. (Marshall Dep. 22:1-22:13.) A third staff member testified that employees also place safety cones when high customer traffic coincides with inclement winter weather, to "remind people to be cautious." (Pls.' Resp., Ex. L, David Dep. 45:5-45:15, Jul. 24, 2012.) The Record does not indicate, nor does Defendant Target assert, any inclement weather on the date of Plaintiff Rosemaria's fall. (Jackson Dep. 43:17-43:19.)

Defendant's employee, Ms. Cecily Loretta Ricer called 9-1-1, and paramedics arrived shortly thereafter to transport Plaintiff Rosemaria to the hospital. (Def.'s Reply, Ex. Y, Ricer Dep. 17:17-17:19, Mar. 29, 2013; *see* Video starting at 2:35:15 PM.) Plaintiff Rosemaria spent three days at St. Mary's Hospital. (Jackson Dep. 59:2-59:5.) As a result of her fall, Plaintiff alleges severe injuries to the head, back, left leg, and arm; physical pain and suffering, disfigurement and disability, mental anguish, fright and shock, denial of social pleasures and the enjoyment of usual activities of life, embarrassment, mortification and humiliation, past and future medical expenses, and loss of earnings and earning capacity. (Am. Compl. ¶ 9(a)-(i).) Plaintiff Rosemaria has consulted at least three neurologists and attempted to complete physical therapy, but ultimately found it too difficult. (Jackson Dep. at 22:24-23:18, 24:17-25:3.) Plaintiff Rosemaria's primary care doctor has disabled her from work indefinitely. (*Id.* at 16:16-16:18.)

The day after the fall, January 5, 2012, Defendant's employee Alison David affirmatively preserved video evidence. (David Dep. 36:15-36:16.) Ms. David preserved video in accordance with Target best practices from "before, during, and after the incident," from a variety of angles. (*Id.* at 36:3-36:9; Video.) On January 26, 2012, the State Court entered an Order to Preserve video evidence on behalf of Plaintiffs. (Pls.' Resp., Ex. K, Ex Parte Order to Preserve ("Order").)[1] The Order requires Defendant to preserve and produce video surveillance from the checkout area, and area between checkout and entrance/exit between the hours of 10:00 a.m. and 4:00 p.m., January 4, 2012. (Order.) Prior to receiving Plaintiffs' Order dated January 26, 2012, however, new

---

[1] This Order was entered prior to removal of this action to this Court.

footage replaced additional video footage from January 4, 2012 in the normal course of Defendant's business practices. (David Dep. 55:1-55:9; Order.) Ms. David testified that footage generally remains available for anywhere up to thirty days, depending on camera location, and automatically deletes as the system requires additional memory. (David Dep. 54:20-55:9.) Upon receiving the Order, Ms. David attempted to recover additional footage in compliance with Plaintiffs' request, but found that it could no longer be obtained. (*Id.* 55:17-55:23.)

## II.    Procedural History

Plaintiff Rosemaria Jackson and her husband Terrence Jackson filed this action alleging that Defendant Target Corporation ("Target") breached its duty to maintain reasonably safe premises, owed to Plaintiff Rosemaria as a lawful business invitee, by failing to correct or warn of a hazardous condition, an alleged water spill, on Defendant's premises. (Dkt. 7, Plaintiffs' Amended Complaint ¶ 7.) Plaintiff Terrence Jackson asserts a claim for loss of consortium as Plaintiff Rosemaria's husband. (Am. Compl. ¶ 10.)[2]

This Court has jurisdiction over this case based on Defendant's removal on May 17, 2012. (Dkt. 1, Notice of Removal.) Plaintiffs amended their original complaint on June 28, 2012. (Dkt. 7, Am. Compl.) Plaintiffs' Amended Complaint alleges that Defendant had a duty to: provide safe premises to Plaintiff Rosemaria, maintain these premises in a reasonably safe condition, avoid creating or increasing risk of harm to invitees, inspect the premises and discover possible dangerous conditions, take precautions to protect invitees, warn invitees of dangerous, hazardous and unsafe

---

[2] The success of Plaintiff Terrence's claim is dependent on those of Plaintiff Rosemaria's.

conditions thereupon, and use due care for the safety and protection of visitors. (Am. Compl. ¶ 7.) Plaintiffs' complaint relies primarily on premises liability.

Plaintiffs allege that they are entitled to damages as a result of Defendant's breach of the above mentioned duties on January 4, 2012, which they assert caused Plaintiff Rosemaria's slip and fall. (Am. Compl. ¶ 8-9.) Defendant's purported failure to discover the alleged defect and either warn invitees or correct the hazardous condition forms the foundation of a premises liability claim. (*See* Am. Compl. ¶ 8(a)-(h).)

On June 4, 2013, this Court entered a stipulation and order for extension of time to file a *Daubert* Motion, so the Court does not consider the disputed expert's testimony at this time. (Dkt. 28, *Daubert* Stip. and Order.)

## III.   Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A moving party may meet that burden "by 'showing' – that is, pointing out to the district court -- that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986). Revised Rule 56 expressly provides that:

A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

(B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).  The revised Rule also provides the consequences of failing to properly support or address a fact:

> If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:
>
> (1) give an opportunity to properly support or address the fact;
>
> (2) consider the fact undisputed for purposes of the motion;
>
> (3) grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it; or
>
> (4) issue any other appropriate order.

Fed. R. Civ. P. 56(e).  "The court need consider only the cited materials, but it may consider other materials in the record."  Fed. R. Civ. P. 56(c)(3).

When the moving party has met its burden under Rule 56, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industries Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Ultimately a district court must determine whether the record as a whole presents a genuine issue of material fact, *id.* at 587, drawing "all justifiable inferences in the light most favorable to the non-moving party," *Hager v. Pike County Bd. Of Education*, 286 F.3d 366, 370 (6th Cir. 2002).


**IV.    Analysis**

7

Michigan law requires a plaintiff alleging negligence to show: (1) the defendant owed plaintiff a legal duty, (2) defendant breached that duty, (3) plaintiff sustained injury, and (4) that defendant's breach was both a factual and legal cause of plaintiff's injury. *Gainer v. Wal-Mart Stores East, L.P.*, No. 2:11-cv-14331, 2013 WL 1248627, at *3 (E.D. Mich. Mar. 28, 2013) (Rosen, C.J.). Defendant's alleged breach of duty serves as the primary disputed element for purposes of its summary judgment motion. A business invitor's duty to protect invitees arises in three distinct scenarios: (1) from the invitor's active negligence, including active negligence of the invitor's employees; (2) from a condition that the invitor knew about; and (3) from a condition of such character and/or duration that the invitor should have known about it. *Clark v. Kmart*, 634 N.W.2d 347, 348-49 (Mich. 2001); *see Cote v. Lowe's Home Center, Inc.*, 896 F. Supp. 2d 637, 644 (E.D. Mich. 2012) (Ludington, J.) (applying the *Clark* standard).

The invitor's duty implies a duty to "inspect the premises to discover possible dangerous conditions of which he does not know, and take reasonable precautions to protect the invitee from dangers which are foreseeable from the arrangement or use." *Conley v. Liptzen*, 199 N.W.2d 833, 836 (Mich. Ct. App. 1972) (citing William Prosser, *Torts* 402-03 (3d ed. 1964)). The Record does not indicate, and Plaintiffs do not assert, that Defendant's employees actually knew of the alleged spill prior to Plaintiff Rosemaria's fall. (*See* Kireko Dep. 13:3-13:9; *see also* Marshall Dep. 23:15-23:19.) Plaintiffs' premises liability claims rest on constructive notice, which requires Plaintiffs to prove that the character and duration of the alleged water spots were such that Defendant should have known about and corrected the hazard.

8

The type of breach alleged traditionally separates premises liability claims into three basic categories: failure to warn, negligent maintenance, or defective physical structures. *Bertrand v. Allen Ford, Inc.*, 537 N.W.2d 185, 186 (Mich. 1995). When basing a claim on Defendant's constructive notice of hazardous conditions, Plaintiffs must first demonstrate that Defendant: (1) knew or should have known the risk of harm posed by the dangerous condition, and (2) should expect invitees would not know or protect themselves. *Gainer*, 2013 WL 1248627, at *4. Plaintiffs must prove breach by showing that Defendant failed to use reasonable care to protect invitees from the hazard. *Id.* at *4. In *Gainer*, the court granted summary judgment where the plaintiff could not prove constructive notice; plaintiff failed to produce sufficient evidence to show when a water spill first appeared, how much water was present and what caused the spill. *Id.* at *10. Facts about the spill's duration, size, and cause are either disputed or subject to ongoing discovery in this case.

Although Plaintiffs allege failure to warn, negligent maintenance, and defective physical structures, this Court's analysis of Defendant's alleged negligent maintenance extends to other allegations in Plaintiffs' complaint.[3]

### A.  Parties Dispute Constructive Notice

Constructive notice traditionally represents a question of fact; disputes over constructive notice therefore defeat summary judgment. *Banks v. Exxon Mobil Corp.*, 725 N.W.2d 455, 455 (Mich. 2007). Defendant argues that Plaintiffs fail to prove constructive notice, and as a result, no duty existed. (Def.'s Mot. at ¶ 7.) Plaintiffs

---

[3] Defendant's Reply argues that there is no room for allegations of active negligence in an invitor-invitee relationship. This runs counter to the precedent established in *Clark v. Kmart*, 634 N.W.2d 347, 348-49 (Mich. 2001).

respond that deposition testimony regarding regular ice spills in the area suffices to show that Defendant had constructive notice of the spill. (Pls.' Resp. at 7; *see* Kireko Dep. 9:18-10:1.) The Court denies Defendant's motion for summary judgment because the parties dispute facts material to constructive notice.

Whether the Defendant had constructive notice of an alleged hazardous condition on Defendant's premises depends on whether the hazard "is of such a character or has existed a sufficient length of time that he should have had knowledge of it." *Clark*, 634 N.W.2d at 349 (citing *Serinto v. Borman Food Stores*, 158 N.W.2d 485, 486 (Mich. 1968) (internal citations and emphasis omitted)). The Record indicates a significant dispute as to the size of the hazardous water spill, in addition to incomplete evidence to show how long the spill existed before Plaintiff Rosemaria's fall. Placement of a wet floor sign or safety cone near the fall's location also raises a question of whether Defendant had constructive notice.

### 1. The Parties Dispute Duration of the Water Spill

Defendant retained video footage showing the surrounding area for seventeen minutes leading up to the fall; the footage does not show any cause for the water spill. (Video.) While Plaintiffs correctly note that this is insufficient to prove lack of notice, the opposite is also true. (Pls.' Resp. at 9.) Defendant can no longer produce any additional video footage to indicate the point at which the hazardous condition arose. In light of Defendant's employees' deposition testimony, whether seventeen minutes constitutes enough time to assign constructive notice represents a genuine issue as to a material fact. Unlike *Clark*, where the Michigan Supreme Court held that deposition testimony affirmatively proved constructive notice when it established that a checkout aisle where

10

grapes caused a fall had been closed for at least one hour prior to the incident, 634
N.W.2d at 349, there is no evidence here barring the possibility that the hazard had
existed long enough to provide constructive notice.

### 2. The Parties Dispute Size of Water Spill

The parties also dispute the size of the alleged water spill. Defendant argues
"that question of fact is not material to the present motion as there is no evidence of
knowledge of, or notice to, Defendant of the alleged presence of water on the tile floor."
(Def.'s Mot. at 12.) Defendant's argument begs the question -- whether the size of the
water spill is sufficient to establish constructive notice under *Clark*.

Plaintiff Rosemaria testified that she observed a "stream of water" measuring
around two feet by six inches. (Jackson Dep. 52:17-53:7.) Defendant's employees,
while agreeing that the water spill was significantly smaller than Plaintiff Rosemaria
alleges, disagree both on the size and number of water spots. Factual disputes exist not
only between Plaintiff Rosemaria and Defendant but also among Defendant's
employees. Since size represents one factor of constructive notice, the water spill's size
represents a material fact in dispute.

Difficulty pinning down the size of the water spill corresponds in part to water's
inherent characteristics. The Court lacks the ability to independently confirm any
assertion regarding the water spill's size due to the inability to observe the water spill
either on the video footage or in photos taken immediately after the fall. (Photos.) Since
water cannot be readily observed like grape juice or blood, this evidence does not
conclusively establish notice. Significant disputes exist as to the size and duration of the
hazard, both relevant facts for proving constructive notice, to defeat summary judgment.

### 3. Defendant's Employees Dispute Reason for Safety Cone Placement

Plaintiffs assert that placement of a small wet floor sign known as a safety cone near the location of the fall demonstrates Defendant's awareness that some danger of slips existed in the general area. (Pls.' Resp. at 7.) The safety cone appears both in photos of the scene and in the security video. (*See* Video starting around 1:50:00 PM; *see also* Pls.' Resp., Ex. G, Video Still Frame.) Defendant's employees testified to various reasons for placing a safety cone ranging from as a preventative warning to marking a hazard. (McSeveny Dep. 20:19-20:23; David Dep. 45:5-45:15.) Those employees also suggested that such indicators may remain in an area long after the danger had subsided, or even when no hazard yet existed. (Marshall Dep. 22:1-22:13; David Dep. 45:5-45:15.) The reason why employees placed a safety cone in the checkout area on the day of Plaintiff Rosemaria's fall remains unclear. Identifying which employee placed the sign and why they did so may serve to conclusively establish Defendant's constructive notice. As discussed below, Plaintiffs have filed a Rule 56(d) Affidavit arguing this point and arguing that Defendant's motion for summary judgment is premature.

### B. Plaintiffs Are Not Entitled to Adverse Inference for Evidence Spoilation

Plaintiffs argue that, although Michigan has not yet determined whether an adverse inference can be drawn when considering a motion for summary judgment, the Court should follow Justice Kelly's concurrence in *Banks* that urges such adoption. *Banks*, 735 N.W.2d at 456. In *Banks*, the Michigan Supreme Court reversed summary judgment in the defendant's favor based on a question of fact where the defendant could not produce video evidence proving the hazard's duration. Justice Kelly

12

suggested that the court go further and hold that where the movant for summary judgment engaged in evidence spoliation, a court should draw an adverse inference in favor of the nonmoving party. *Id.* Justice Kelly relied on the court's obligation to view all evidence in favor of the nonmoving party as required by *Matsushita*, 475 U.S. 574 and *Hager*, 286 F.3d 366.

Federal spoliation law applies to a case litigated in federal court. *Adkins v. Wolever*, 554 F.3d 650, 651-52 (6th Cir. 2009) (en banc). Federal law requires that the party seeking an adverse inference for evidence spoliation must prove:

1. that the party having control over the evidence had an obligation to preserve it at the time it was destroyed;
2. that the evidence was destroyed "with a culpable state of mind"; and
3. that the destroyed evidence was "relevant" to the party's claim or defense such that a reasonable trier of fact could find that it would support the claim or defense.

*Herbert v. Baker*, No. 09-cv-12314, 2010 WL 5330050, at *5 (E.D. Mich. Dec. 21, 2010) (Rosen, C.J.) (internal citations omitted). In *Herbert*, the court refused to draw an adverse inference where the defendants produced all video evidence available to them and where "Plaintiff…made no showing that the tapes were destroyed to suppress the truth." *Id.* at *4. The defendant in *Herbert* had failed to preserve video evidence when the tapes were recorded over "as a matter of course." *Id.* at *6. The same is true here -- Defendant's employee similarly took immediate steps in accord with the company's best practices to preserve security tape footage in connection with Plaintiff Rosemaria's fall. (David Dep. 36:15-36:16.) In both this case and *Herbert*, the security system automatically recorded over relevant footage, without any evidence of the Defendant's ill intent.

Plaintiffs assert that Defendant engaged in spoliation of evidence by not preserving more video footage of the time period preceding the fall. (Pls.' Resp. at 11-12.) Plaintiffs correctly point out that spoliation takes place when a party deliberately *or* accidentally loses or destroys material evidence, or fails to preserve it when the party should know they are under a duty to preserve. (Pls.' Resp. at 10) (citing *Brenner v. Kolk*, 573 N.W.2d 65, 70 (Mich. 1997)). The parties agree that Defendant's employee, Alison David, affirmatively preserved video evidence on the day following the fall, January 5, 2012. (David Dep. 36:15-36:16.) In accordance with Target's best practices, Ms. David saved footage from "before, during, and after the incident," from a variety of angles. (*Id.* 36:3-36:9; Video.) Contrary to Plaintiffs' assertion, Defendant's agent did not "[choose] to discard the most important evidence pertaining to its notice argument," but preserved an amount of footage that, while in accordance with Target's best practices, in hindsight does not completely satisfy either party's needs. (Pls.' Resp. at 12.)

Plaintiffs cannot prove the second prong of federal spoliation analysis required to obtain an adverse inference, culpability. Ms. David's attempt to comply in addition to the fact that video evidence was destroyed in the normal course of Defendant's business demonstrates a lack of culpable mindset as required by federal spoliation law. Plaintiffs bring forth no evidence to show any intent on Defendant's part to hinder or obstruct Plaintiffs' case by destroying video evidence. Since Plaintiffs fail to show Defendant's culpability, the Court DOES NOT adopt an adverse inference with regard to Defendant's failure to produce additional video evidence.

### C.  Plaintiffs' Rule 56(d) Affidavit Also Defeats Summary Judgment

Plaintiffs have timely submitted a Rule 56(d) Affidavit arguing that Defendant's motion for summary judgment should be denied as premature. Federal Rule of Civil Procedure 56(d) states, in pertinent part, that:

> If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:
> 1. defer considering the motion or deny it;
> 2. allow time to obtain affidavits or declarations or to take discovery; or
> 3. issue any other appropriate order.

Fed. R. Civ. P. 56(d).

Plaintiffs' Rule 56(d) Affidavit explains that they require additional discovery regarding "employee training, contract cleaners, and selection, consideration and use of rugs in front of its soda and ice machine." (Rule 56(d) Affidavit at 2.) Plaintiffs have requested these items during "at least eight notices of depositions" and have submitted four notices to produce. (Pls.' Resp., Ex. N5, Notices of Taking Depositions ("Notices"); Pls.' Resp., Ex. N1-N4, Notices to Produce.) Plaintiffs characterize Defendant's delay in providing such discovery as "unreasonable." (Rule 56(d) Affidavit at 2.)

Where discovery has not been completed, the Court may, consistent with Rule 56(d), deny Defendant's motion for summary judgment. Although Defendant characterizes Plaintiffs' notices to produce as including merely employee training protocol (Def.'s Reply at 5), Plaintiffs' notices request modules and procedures related to:

> i.  maintenance of the floor between the cash registers and the Food Avenue;
> ii.  investigation of injury incidents;
> iii.  use of wet floor indicators;

      iv.  use of rugs including but not limited to at Food Avenue;
      v.  incident reporting systems; and/or
      vi.  code green

(Pls.' Resp., Ex. N1 "Notice to Produce" at 2.) In addition to identification of outside cleaning contractors, Plaintiffs also request an outline of training provided at Target Business College and consideration of rugs used at Food Avenue. (Notice to Produce at 2.) Finally, Plaintiffs request the identity of employees working in the area at the time of the incident and employees who appear on the video. (Pls.' Resp., Ex. N2, Plaintiffs' Supplemental Notice to Produce at 2.) Several of these, notably practices regarding use of wet floor signs, maintenance of the floor in the area where the incident took place, and identification of employees who were present, are relevant to Plaintiffs' case. Plaintiffs' "Second Supplemental Notice to Produce" adds a request for all injury reports in this area from January 1, 2008 through present, which is also relevant to constructive notice. (Pls.' Resp., Ex. N3, "Plaintiffs' Second Supplemental Notice to Produce" at 2.)

      This Court rejects Defendant's argument that Plaintiffs' Rule 56(d) Affidavit requests merely training materials, which have "nothing to do with notice of the alleged defective condition." (Def.'s Reply at 5.) Plaintiffs request documents, procedures and modules related to floor maintenance between the cash registers and Food Avenue and use of wet floor indicators -- all relevant to the issue of constructive notice and duty. (Rule 56(d) Affidavit; Notice to Produce.) As to training materials, Ms. Marshall, one of Defendant's employees, indicated that she learned safety cone placement procedure during staff training, so discovery of these materials is also relevant. (Marshall Dep. 22:20-23:4.)

### D. Based on the Parties' Stipulated Order, Defendant's Motion is Premature as to Plaintiffs' Remaining Claims

On June 4, 2013, this Court entered a stipulation and order for extension of time to file a *Daubert* motion (Dkt. 28) regarding testimony of Plaintiffs' expert Mr. George Bombyk, an accident prevention and safety specialist. (*See* Pls.' Resp., Ex. I, Bombyk Aff.) This stipulation and order suggests that Defendant itself admits the need for further discovery on Plaintiffs' remaining claims. Accordingly, Defendant's motion for summary judgment as to Plaintiffs' remaining claims is denied as premature.

## V.   Conclusion

For the foregoing reasons, Defendant's motion for summary judgment is DENIED.

s/Nancy G. Edmunds
Nancy G. Edmunds
United States District Judge

Dated:  July 18, 2013

I hereby certify that a copy of the foregoing document was served upon counsel of record on July 18, 2013, by electronic and/or ordinary mail.

s/Johnetta M. Curry-Williams
Case Manager
Acting in the Absence of Carol Hemeyer

17